670 A.2d 459

**Duk Hee RO**

v.

**Raymond A. HEREDIA, Sean T. Murphy
and William W. Hines.**

**No. 31, Sept. Term, 1995.**

Court of Appeals of Maryland.

Jan. 23, 1996.

Reconsideration Denied March 1, 1996.

Matthew S. Yoo, Baltimore, for petitioner.

No argument on behalf of respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

RODOWSKY, Judge.

We granted certiorari in this landlord-tenant case in order to determine the amount in controversy on a tenant's appeal from the District Court of Maryland in a rent escrow case where there is no claim based on a right to, or obligation for, continued possession by the tenant. Because we conclude that the amount in controversy was $1,700, the tenant's appeal was properly heard de novo. We also hold, as explained below,

that the circuit court erred by entering judgment, over the objection of the landlord, in an amount exceeding $1,700.

The petitioner, Duk Hee Ro (Landlady), and the respondents, Raymond A. Heredia, Sean T. Murphy, and William W. Hines (Tenants), entered into a lease dated August 24, 1993 for apartment 41 at 330 North Market Street in the City of Frederick. The term of the lease was one year from that date at a monthly rent of $850. Tenants paid a security deposit of $900 and $226.67 in rent for the balance of the month of August.

The parties orally agreed, as found by the circuit court, that Landlady would make a number of repairs, including making the third bedroom habitable by, *inter alia,* providing heat to that room. Unknown to Tenants, Michael Blank (Blank), a housing inspector for the City of Frederick, had inspected the premises on July 19, 1993. Blank cited the property for numerous violations, including a roof leak that had caused water damage to a living room wall and evidence of pigeons inhabiting the attic. Blank, by registered letter dated August 6, 1993, attempted to notify Landlady of the violations, but she refused to accept delivery on three occasions. Blank hand delivered the letter to Landlady on August 30.

Tenants paid the $850 per month rent for the months of September, October, and November. In early October, Blank reinspected the premises. Although some of the items on his earlier notice had not yet been corrected, his inspection report noted that the water damage had been repaired. Based on information given to him by Landlady's maintenance man, but without personal observation by.Blank, Blank also reported that the pigeons and their leavings had been removed from the attic.

On December 2 Tenants wrote to Landlady threatening to complain to the housing code enforcement authorities if the promised repairs were not made immediately. Tenants also withheld the December rent. On December 7, they complained to Blank. On his reinspection of December 9, he found, *inter alia,* that the roof was still leaking and that

unlicensed electrical work by the maintenance man was a fire hazard.

Landlady filed a summary ejectment action against Tenants on December 8 in the District Court of Maryland sitting in Frederick County. The next day Tenants filed an action of rent escrow in the District Court pursuant to Maryland Code (1974, 1988 Repl.Vol., 1995 Cum.Supp.), § 8–211 of the Real Property Article (RP). They deposited $850, representing the December rent. Tenants deposited the January 1994 rent on January 6, bringing the escrowed amount to $1,700.

Trial in the District Court was held on January 7. The judge ruled, as reflected by an order signed that day, that "Plaintiff has failed to prove entitlement to escrow." Thereafter Landlady moved in the District Court for the release to her of the funds from escrow, on the ground that there had been no violation of her obligations under RP § 8–211. The District Court deferred ruling on the motion, pending possible appeal.

On January 22, 1994, a four square foot section of the living room ceiling in the subject apartment collapsed to the floor carrying with it an accumulation of pigeon feces, dead pigeon bodies, and pigeon eggs. After consultation with an inspector from the Frederick County Health Department, Blank condemned the premises.

Tenants thereafter timely appealed to the Circuit Court for Frederick County. The circuit court conducted a de novo, non-jury trial in January 1995 at which both sides were represented by counsel. Judgment was entered in favor of Tenants. Focusing primarily on the lack of heat in the third bedroom and on the leaking roof-collapsed ceiling-pigeon infestation, the court found that Landlady violated her obligations under RP § 8–211(e)(1), (5), and (6). The court also found that Landlady had notice of these conditions as early as August 1993.

From the standpoint of relief, the circuit court relied on RP § 8–211(m) which provides:

"The court shall ... make any order that the justice of the case may require, including ...

. . . .

> (3) Order that the amount of rent required by the lease, whether paid into court or to the landlord, be abated and reduced in an amount determined by the court to be fair and equitable to represent the existence of the conditions or defects found by the court to exist."

The court entered judgment in favor of Tenants against Landlady for $2,776.67 representing a 100% rebate of the rent from August 24 through November 1993, and the court also awarded to Tenants the escrowed $1,700.[1]

Landlady petitioned this Court for the writ of certiorari which we granted. Her primary contention is that the appeal to the Circuit Court for Frederick County should have been dismissed. Relying on Md.Code (1974, 1995 Repl.Vol., 1995 Cum.Supp.), § 12–401(f) of the Courts and Judicial Proceedings Article (CJ), she submits that the amount in controversy exceeded $2,500 and that, although the appeal should have been on the record, Tenants did not furnish a transcript of the proceedings in the District Court.[2] Landlady secondarily contends that "the Circuit Court abated the rent in an arbitrary and capricious manner without making complete factual

---

1. The circuit court further ordered that the lease was terminated. The parties, however, as discussed *infra*, had treated the lease as terminated by the condemnation in January 1994, when Tenants were required to vacate the premises. The condemnation was not lifted until mid-March.

    In addition, the circuit court ruled that, under RP § 8–211, it could not order a repayment by Landlady of the security deposit, but it observed that Tenants would be free to bring a separate action in order to seek recovery of that amount. We intimate no opinion on these matters. There is no cross-petition by Tenants on this ruling, adverse to them.

2. CJ § 12–401(f) in relevant part provides:

    "In a civil case in which the amount in controversy exceeds $2,500 exclusive of interest, costs, and attorney's fees ... and in any case in which the parties so agree, an appeal shall be heard on the record made in the District Court."

determination of the amount of diminution of the value of the lease[d] premises due to defects." Brief of Petitioner at 6.[3]

## I

■ Landlady's argument that the appeal to the circuit court should have been dismissed is an argument that works backwards from the circuit court's judgment that effectively totaled $4,476.67. That is not the correct analysis. In order to determine whether an appeal from the District Court to a circuit court is de novo or on the record, the amount in controversy, as a matter of procedural necessity, ordinarily must be determined at or before the time within which the transcript must be ordered.

In this rent escrow action the appeal deadline was thirty days from the date of final judgment in the District Court. CJ § 12–401(e); Maryland Rule 7–104(a). The rule governing appeals heard on the record of the District Court provides that "the appellant, within 10 days after the date the first notice of appeal is filed, shall order in writing from the clerk of the District Court a transcript...." Md.Rule 7–113(b)(1). Thus, for the purpose of CJ § 12–401(f) the time when the amount in controversy is determined cannot be postponed until the appeal is heard in a circuit court.

Further, determining the amount in controversy by the relief granted in a de novo trial on appeal would operate as a trap, particularly in rent escrow cases. For example, if an appeal to the circuit court is properly noted when the amount in controversy would require a de novo trial, continued payment of the rent into escrow, during the pendency of a tenant's appeal, should not result in dismissal of the appeal

---

3. Thirdly, Landlady argues that the evidence was insufficient to support (1) finding that she had notice of the defects as required by RP § 8–211(g) and (2) that she had a reasonable time to correct the conditions, as required by RP § 8–211(i). Trial of the subject District Court appeal commenced on January 3, 1995 at 10:40 a.m. and, with recesses, did not conclude until 7:28 p.m. that day. The transcript of testimony and arguments consists of 240 pages. We have fully reviewed the record and find no merit in the petitioner's third contention.

when the appeal comes on for hearing on the ground that the amount in controversy exceeds $2,500 and no transcript has been provided by the appellant. That result is not consistent with the purpose of the rent escrow statute, RP § 8–211(a) and (b), and it is not consistent with the intent of CJ § 12–401, conferring a right of appeal from judgments of the District Court.

### A

Accordingly, at issue in the instant matter is the amount in controversy when Tenants noted their appeal. Landlady considers that, in addition to the escrowed rent, a rebate of the rent paid to her was in controversy in the District Court. It is plain, however, from a review of the procedural history of this particular case that the only controversy between the parties in the District Court involved the escrowed $1,700.

After Landlady had filed her action of summary ejectment, Tenants' "Petition in Action of Rent Escrow," filed on a District Court preprinted form, was docketed as a separately numbered case. This Court has said that

> "[u]nder the 'amount in controversy' test for the monetary jurisdiction of an appellate court, under circumstances where the plaintiff appeals from an adverse decision barring his entire claim, courts ordinarily look to the demand in the pleading setting forth the plaintiff's claim, including any amendments in the trial court."

*Purvis v. Forrest Street Apartments*, 286 Md. 398, 402, 408 A.2d 388, 390 (1979). In the portion of the form petition requesting relief Tenants checked only that Landlady's separately numbered case "be dismissed or that judgment be entered for the Tenant[s]." Tenants did not check or fill in the paragraph on the form that reads as follows:

> "[T]hat the amount of the rent be abated and reduced to the amount of $. . . . . . . per . . . . . . . and a rent escrow account established by this Court until the above conditions are corrected by the Landlord and approved as required."

Nor did Tenants in writing make a claim for a return of the security deposit. Under the *Purvis* test, the amount in controversy was $1,700.

After the District Court judgment in her favor in the rent escrow case, when Landlady moved that she be paid the escrow fund, Tenants in their answer submitted, *inter alia*, that releasing the funds "would render any appeal in the rent escrow case moot." Obviously, if the rent escrow case involved a controversy over anything of value other than the escrowed amount itself, the appeal would not be moot. Thus, Tenants did not consider that the District Court case had involved, or that an appeal would involve, either the security deposit or the right to possession.

When Tenants appealed the dismissal of their rent escrow action, the only record that was transmitted to the circuit court from the District Court was the record in the rent escrow action. That record does not reflect the procedural or statistical disposition of the summary ejectment action. It appears clear that the parties have treated the rent escrow action as the vehicle for resolving the controversy between them.

Nevertheless, the record also reflects that Tenants were still occupying the premises on January 22 when the ceiling collapsed, leading to the order of condemnation under which Tenants were required to vacate the apartment. Neither party sought judicially to assert any rights that thereafter arguably might have accrued under the lease. As a practical matter, both parties treated the lease as terminated. Tenants never paid rent into the escrow after January. There is no evidence that Tenants sought to resume possession under the lease after the condemnation was lifted. The notice of Tenants' appeal to the circuit court was filed after the condemnation. Consequently, the amount in controversy in this case at the time of appeal does not involve the value of the right to continued possession.

For all of the foregoing reasons we hold that the amount in controversy when the order for appeal was filed

was the $1,700 in the escrow account. Consequently, Tenants' appeal was properly taken as one to be heard de novo.

## B

Remaining for our consideration is the question of how a case in which the amount in controversy was $1,700 at the time of appeal grew to a $4,476.67 judgment in the circuit court, without monthly refreshers being added to the escrow which, in this case, was capped as a result of the lease termination.

In the circuit court the first indication of an expansion of Tenants' claims beyond the escrowed rent came at the conclusion of the opening statement by counsel for Tenants, when he stated that Tenants would ask the court for the escrowed rent *and* return of the security deposit. Analytically, Tenants should have sought leave of the circuit court to amend their complaint. In appeals from the District Court heard de novo, "[t]he form and sufficiency of pleadings ... are governed by the rules applicable in the District Court." Rule 7–112(c)(1). Otherwise, a de novo civil appeal proceeds "in accordance with the rules governing cases instituted in the circuit court." Rule 7–112(c)(3). We have held, *supra,* that Tenants' District Court petition did not include a claim for the security deposit. To claim that deposit Tenants, in effect, sought to amend their complaint, but to do so at trial required either the consent of Landlady or leave of the circuit court. Rules 3–341(b) and 2–341(b).

■ Had leave of the circuit court been sought, it should not have been granted. The potential claim for the security deposit existed at the time the rent escrow action was tried in the District Court, but if that claim literally had been in controversy in the District Court rent escrow case, $2,600 would have been the amount in controversy at the time the order for appeal was filed. A party should not be permitted to exclude existing claims from the computation of the amount in controversy at the time of appeal, in order to proceed de novo in the circuit court, and then add those previously

existing claims to the controversy once the matter is in the circuit court. Unlike rent regularly paid into an escrow after a tenant's appeal has been filed, Tenants' potential claim for the security deposit in this case was extant when the District Court rent escrow case was tried, but it was not asserted in that case.

Landlady did not object to Tenants' attempt in their opening statement to expand their claim to include return of the security deposit. That relief, however, was denied in this case by the circuit court.

After all of the testimony had been taken in the circuit court, at the very end of Tenants' summation, they requested the escrowed rent, the security deposit, *and* the rent paid directly to Landlady. Immediately thereafter Landlady opened her summation by pointing out that the remedies suggested by Tenants were not available in an appeal de novo. Landlady said that the theories of relief asserted by Tenants should have been raised by an appeal on the record.

■ Landlady's objection was well taken. Seeking rebate of the rent paid directly to Landlady was, in effect, an attempt to amend to assert a claim that existed when Tenants appealed, but which had not been in controversy at that time. We hold that under the facts of this case the circuit court procedurally erred in entering judgment, over Landlady's objection, in an amount exceeding $1,700.

## II

Landlady also contends that the circuit court's abatement of 100% of the pre-escrow rent was unsupported by the evidence and was arbitrary and capricious. Our modification of the circuit court judgment pursuant to Part I.B of this opinion moots that issue.

*JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THAT COURT FOR THE ENTRY OF A JUDGMENT IN FAVOR OF RESPON-*

DENTS, RAYMOND A. HEREDIA, SEAN T. MURPHY, AND WILLIAM W. HINES, FOR $1,700. COSTS IN THIS COURT TO BE DIVIDED EQUALLY BETWEEN PETITIONER AND RESPONDENTS.